**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 1:08cr00271 (RCL) |
| | : | Judge Royce C. Lamberth |
| EDDIE RAY KAHN, et al., | : | |
| | : | |
| Defendants. | : | |

**DANNY TRUE'S OPPOSITION TO THE GOVERNMENT'S MOTION**
**IN LIMINE TO PRECLUDE THE TESTIMONY OF WALKER FOWLER TODD**

Defendant, Danny True, through his attorneys HANNON LAW GROUP, LLP,

respectfully presents this Opposition to the Government's Motion in Limine to Preclude the

Testimony of Walker Fowler Todd.  In support of his motion, Mr. True states as follows:

**BACKGROUND**

On November 2, 2009, Danny True filed his Pretrial Statement and under the heading

"List of Expert or Opinion Witnesses" indicated that he had "None at this time."  (Defendant

Danny True's Pretrial Statement, Doc. #215, at 20.)  After filing that Pretrial Statement, The

Honorable Henry H. Kennedy, Jr., became ill and the case was reassigned to The Honorable

Royce C. Lamberth, and postponed until April 27, 2010.  In the months that passed between

filing his Pretrial Statement and the start of the trial, Mr. True continued his efforts to gather

evidence in his favor and while doing so, retained the services of Walker Fowler Todd, Ph.D., to

present expert testimony at his trial.  Mr. True filed a Notice of Intent to Offer Expert Testimony

on April 5, 2010, twenty-two days before his trial was scheduled to begin.  (Doc. # 253)  Dr.

Todd has an impressive background in law and economics that includes twenty years with two

Federal Reserve Banks and sixteen years of experience in academic environments.

On April 15, 2010, the Government filed a "Motion to Preclude Untimely Noticed

Testimony of Walker Fowler Todd."[1]  (Doc. #256)  In this motion the Government argues that the expert testimony proposed by Mr. True was untimely, irrelevant, unqualified, and prejudicial. Mr. True now opposes that motion.[2]

## ARGUMENT

## I.    TRUE'S NOTICE NOT UNTIMELY

Rule 16 places a reciprocal obligation on criminal defendants to provide a summary of expert witness testimony when the government complies with a request to do so.  Here, Mr. True complied with this reciprocal obligation by filing his Notice of Intent to Offer Expert Testimony on April 5, 2010.  (Doc. # 253.)  Although Mr. True indicated in his pretrial statement on November 2, 2010, that he did not plan to offer any expert testimony "at this time," in the five months that ensued, Mr. True found an expert witness to assist his defense.  The Government now seeks to exclude Dr. Todd's testimony on the basis of it being untimely, without citing any authority to support its position.

Rule 16(b)(1)(C) is intended to give each party "a fair opportunity to test the merit of the expert's testimony through focused cross-examination;" it is "not intended to create unreasonable procedural hurdles."  Fed. R. Cr. P. 16 advisory committee's note.  In fact, "[t]he rule is silent as to the timing of [expert] discovery, and courts have upheld disclosure even at relatively late stages of the proceedings leading up to trial, as long as there was no significant prejudice to the other party."  24 *Moore's Federal Practice,* § 616.05 (Matthew Bender 3d ed.).

---

[1]        Counsel forwarded the Government's Motion to Dr. Todd, who took great offense to the assertions contained therein.  Dr. Todd took it upon himself to contact Mr. McLellan to express his displeasure. Among other things, Dr. Todd took particular exception to the Government's reliance on an affidavit found on a website purporting to be authored by Dr. Todd.  In fact, the affidavit had been altered by unknown third parties and distributed online.  This affidavit as it appears online had never been entered into the record of any court, until the Government made it part of the public record of this proceeding.

[2]        At a status hearing on April 20, 2010, the Court orally granted counsel's request to extend the time to reply to this motion until April 30, 2010.

In <u>United States v. Mendoza-Paz</u>, the 9th Circuit Court of Appeals upheld the trial Court's decision to admit testimony of two experts even though one had only been identified twelve days before trial and the other only four days prior to trial.  <u>United States v. Mendoza-Paz</u>, 286 F.3d 1104, 1112 (9th Cir. 2002).  The 9th Circuit held that unless the opposing party could demonstrate that they were prejudiced, the evidence would not be excluded.  <u>Id</u>.  In <u>United States v. White</u>, the 7th Circuit Court of Appeals held that this required the party to "establish that any Rule 16 violation hampered his opportunity to prepare a defense or that the violation substantially influenced the jury."  <u>United States v. White</u>, 582 F.3d 787, 804-805 (7th Cir. Ill. 2009).  The Court found that this standard satisfied, even though the expert in question had been identified hours before trial:

> He had an opportunity to examine Berk outside of the presence of the jury for more than an hour before trial. His counsel vigorously cross-examined the government's expert, and the testimony he objects to was offered in rebuttal, as a part of Berk's redirect testimony. Moreover, White had his own expert available on this subject whom he chose not to call.

<u>Id</u>.

Mr. True's Notice of Intent to Offer Expert Testimony satisfies Rule 16(b)(1)(C). The Notice informed the Government of Dr. Todd's testimony twenty-two days before trial; far more notice than that upheld in <u>Mendoza-Paz</u> and <u>White</u>.  Rule 16 does not provide any required timeline within which Notice of Expert testimony must be provided and the notice given clearly achieves the purpose of the rule by giving the Government "a fair opportunity to test the merit of the expert's testimony through focused cross-examination." Finally, the Government has not even attempted to establish the requisite prejudice to exclude the testimony.  Mr. True's Notice is sufficient.

## II.   <u>TODD'S PROPOSED TESTIMONY IS RELEVANT</u>

The Government has alleged that Mr. True committed mail fraud by using "fraudulent" Bills of Exchange to defraud the United States Government.  To prove this, the Government must convince the jury, beyond any reasonable doubt, that Mr. True intended to pass the Bills of Exchange off as real documents while knowing that they were in fact bogus.  Accordingly, both the actual genuineness of the instruments and Mr. True's subjective belief as to the genuineness of the instruments are essential facts the jury must determine in order to convict Mr. True.  Any evidence that tends to make these facts "more probable or less probable than it would be without the evidence" is relevant and should not be excluded unless some other rule prohibits it.  Fed. R. Evid. 401.

The Government claims that every one of the subjects of Dr. Todd's proposed testimony is irrelevant.  Not only is the Government's claim largely unsupported by any authority and contrary to ruling in other cases, if true, it would preclude the testimony of their own expert witness, William Kerr.  More importantly, the subjects of Dr. Todd's proposed testimony are essential to the jury's determination of facts of consequence in this case, and thus are relevant.

In <u>United States v. Wahler</u>, a case in the United States District Court for the Western District of North Carolina that dealt with issues very similar to those presented here, Dr. Todd was offered as an expert witness "in the area of financial instruments" to rebut the testimony of the Government's expert, who "testified that the 'bills of exchange' and related documents at issue in this case are fictitious financial instruments."  <u>See</u> Motion in Limine at 1, attached as Exhibit A.  In that case, the Government filed a Motion in Limine to exclude the testimony of Dr. Todd, arguing in part that "[a]lthough the affidavit sets out the educational and professional experience of Mr. Todd, it fails to address any issues related to the financial instruments relevant

to this case." Id.  The District Court promptly overruled the Government's motion and permitted

Dr. Todd to testify.  See Transcript of Walker Todd from United States v. Wahler, attached as

Exhibit B.  Dr. Todd, with the permission of the District Court, went on to testify as to the

creation of the United States' monetary system, conflicting opinions with respect thereto, the

process whereby the United States identifies the fraudulent Bills of Exchange, the redemption

theory—all the subject which the Government now claims are irrelevant. Id.  The Government

offers no reason why such testimony already permitted in other cases should be excluded in this

instant case.  In fact, every subject identified in Mr. True's Notice of Intent to Offer Expert

Testimony is relevant to facts of consequence in this action.

      First, the Government argues that the monetary history of the United States is not

relevant.  As is evidenced by recent events, the American banking system consists of a

complicated web of interrelationships and instruments so convoluted that they are far beyond the

knowledge of the average American.  Without an understanding of the history and workings of

the American banking system, the jury will not be able to properly understand the place Bills of

Exchange—an uncommon but legal form of payment[3]—have within that system, and the jury

would have insufficient information upon which to base their determination as to whether Mr.

True had a good faith belief that they were.  Furthermore, there is ample evidence in the

Government's own case regarding the history of the monetary system, and Mr. True will also

produce correspondence between himself and the IRS, all of which will be easier for the jury to

understand after Dr. Todd lays a foundational knowledge of the history of the monetary system.

The Government's opposition to this relevant evidence is particularly suspect because its own

expert witness has offered the same testimony in other similar cases.  See Transcript of Kerr

---

[3]     The Government does not argue that all Bills of Exchange are fictitious, only that the particular instruments used here are fraudulent because they are drawn on non-existent accounts.

Testimony in <u>United States v. Pansier</u>, attached as Exhibit C at 1033.

Second, the Government attempts to exclude Dr. Todd's proposed testimony as to the "Redemption Theory" on the basis that the Court has already precluded evidence or argument to the jury supporting a claim that federal tax laws are invalid.  This argument misconstrues the proposed subject of Dr. Todd's testimony.   Dr. Todd is expected to testify as to how Bills of Exchange and the Redemption Theory were utilized in the United States by persons who disagreed with the Government's prevailing view regarding the nature of money and underpinnings of the federal tax system.  Dr. Todd will not testify that these theories are correct in their entirety; instead, he will explain what these theories are so that the jury can better understand them and ultimately determine whether Mr. True believed these theories in good faith, which is a complete defense to these charges.

The Government has already admitted that such evidence is admissible.  In its Motion to Exclude Tax Defier Evidence, the Government conceded that the Court "cannot exclude evidence relevant to the jury's determination of 'what a defendant thought the law was.'" (Gov't Motion, Doc. #62 at 9-10)(quoting <u>United States v. Powell</u>, 955 F.2d 1206, 1214 (9th Cir. 1991)).  Indeed, the Government explained, "In cases such as this, where the defense hinges on the element of willfulness, 'the defendant is entitled to wide latitude in the introduction of evidence tending to show lack of intent.'"  <u>Id</u>. at 10 (quoting <u>United States v. Lankford</u>, 955 F.2d 1545, 1550 (11th Cir. 1992)). Mr. True does not intend to introduce this evidence to undermine the authority of the Court or in any way suggest that the redemption and other theories are legally correct; he intends to introduce them for the sole purpose of helping the jury understand what the theories are that he believed, so that the jury can judge whether Mr. True acted in good faith.

The Government also misconstrues the third and fourth subjects of Dr. Todd's proposed testimony, choosing to characterize them as attempts to introduce evidence as to the Government's use of its prosecutorial discretion. Mr. True intends to make no such argument, nor will Dr. Todd offer any such testimony. Dr. Todd will testify as to the process whereby the United States identifies fraudulent BOEs—not how the Government chooses to prosecute individuals who used BOEs. This testimony is relevant to the ability and likelihood of fraudulent BOEs passing through undetected, and ultimately, to the intent of Mr. True. The Government has already presented evidence that the Treasury attempted to negotiate some of the BOEs, without success. Mr. Todd ought to be permitted to testify as to how this could have occurred and why it did not occur in the majority of circumstances.

This testimony is also essential to help the jury to fully understand—start to finish—how the Bills of Exchange at issue in this case were used by the defendants. It would be profoundly prejudicial for the Government to attempt to convict Mr. True of using Bills of Exchange to defraud the United States, then preclude Mr. True from presenting any evidence as to what happens with them once they are placed in the mail or once the government ultimately receives them. The Government is attempting to undermine Mr. True's good faith defense by prohibiting him offering testimony as to the complete process he allegedly utilized with the BOEs. Again, the Government's opposition to this relevant evidence is suspect because its own expert witness has offered the same testimony in other similar cases. See Transcript of Kerr Testimony in United States v. Pansier, Exhibit C at 1037.

As the Government acknowledges, Mr. True is entitled to present evidence that he acted in a good faith belief that what he was not violating any laws. However, the Government then argues that any evidence as to the views of third parties is totally irrelevant to Mr. True's

subjective intent.  In support of its argument, the Government cites United States v. Cheek and United States v. Delfino.  In Cheek, the defendant was convicted for failing to pay his taxes, not mail fraud.  Cheek v. United States, 498 U.S. 192 (U.S. 1991).  Although mistake of law is not normally a defense to a crime, it is a defense to a violation of tax law because those laws are so complex that people might not be aware of the existence of a specific provision.  Id. at 205.  This is a case of Mr. True acting on his views regarding complex issues, including whether he had the subjective good faith belief that the Bills of Exchange he allegedly used were legitimate financial instruments.  The rule articulated in Cheek lends itself to an expert review of the history of BOEs and the Redemption Theory.

In United States v. Delfino, the Court acknowledged "testimony from other participants in the McCarley scheme could be relevant, at most, to bolster the Delfinos' claim that they acted in good-faith reliance on McCarley's advice." United States v. Delfino, 510 F.3d 468, 471 (4th Cir. 2007).  The Court then excluded testimony from third parties reasoning that the *good faith advice* defense could not be bolstered by those third parties because they did not take advice from McCarley.  Id.  Here, Mr. True has claimed that he acted in good faith because he subjectively believed that the instruments he allegedly used were legitimate.  The intellectual history of the theories which Mr. True studied is a far different nature of evidence than subjective beliefs of others.

Furthermore, although the focus is on Mr. True's subjective belief, the objective reasonableness of Mr. True's views affect the likelihood that he truly held the belief subjectively.  For example, it might be difficult for the jury to conclude Mr. True holds a certain belief if nobody else shares his view; however, the historical underpinnings of those beliefs evidence an endeavor byMr. True to educate himself to ideas which themselves have a history.

Finally, the Government argues that it is "pointless" to have Dr. Todd rebut the testimony of their expert because the Government does not plan to solicit the specific point from Mr. Kerr that Dr. Todd proposes to rebut.  Obviously, if Mr. Kerr does not testify as to his opinion identified in his report, Dr. Todd will not be asked to rebut that specific point.  However, it is likely that Mr. Kerr will testify as the factual basis that led him to form that opinion and Dr. Todd, who disagrees, will be available to dispute those facts presented.

## III.   DR. TODD IS QUALIFIED TO GIVE EXPERT TESTIMONY

Dr. Todd has been found to be a qualified expert in numerous cases similar to this matter and he is qualified as an expert as it pertains to the testimony offered here.  Rule 702 permits an expert to testify if it is established that:

> (A) the "witness qualified as an expert by knowledge, skill, experience, training, or education," as to a "scientific, technical, or other specialized knowledge;"

> (B) that will "assist the trier of fact to understand the evidence or to determine a fact in issue;" and

> (C) that "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

Fed. R. Evid. 702.  The Government contends that Dr. Todd does not satisfy the first requirement because he has not worked at the Federal Reserve Bank since 1994, that his testimony does not satisfy the second requirement because it is irrelevant, and that the final requirement is not met because he has not adequately demonstrated that the methods used to form his analysis are sufficiently reliable.  The relevancy of Dr. Todd's testimony has been discussed at length in the proceeding section and will not be repeated here. Dr. Todd does possess specialized knowledge as a result of his knowledge, skill, experience, training, and education.  Finally, Dr. Todd's testimony is reliable.

A.   <u>Specialization</u>

The Government's contention that Dr. Todd does not possess specialized knowledge may be the most fantastic of their arguments. Dr. Todd has testified as an expert witness in many similar cases.  Specifically, the Government claims that Dr. Todd does not have specialized knowledge about how the IRS identifies fraudulent Bills of Exchanges because he never worked for the IRS or Treasury Department and left the Federal Reserve Bank of Cleveland "approximately 20 years ago."[4]  However, the Government cites no case requiring that the knowledge be gained during the time period in question, nor is it important to do so.  Any such rule would be "at odds with the liberal admissibility standards established by Rule 702.  4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence*, § 702.04 (Joseph M. McLaughlin, ed., Matthew Bender 2d ed. 1997.  In any event, if it turns out that Dr. Todd's testimony is outdated, the Government is free to impeach him on cross-examination.

Even if Dr. Todd's personal experience dealing with BOEs while working at the Federal Reserve Bank is not sufficient, his testimony would be admissible on other grounds.  Rule 702 only requires that an expert have some "knowledge, skill, experience, training, or education," upon which to base his opinion.  "The disjunctive conjunction, which we must assume the drafters of the rule chose deliberately, suggests that an expert may be qualified on any of the five bases listed." <u>Lavespere v. Niagara Mach. & Tool Works</u>, 910 F.2d 167, 176-177 (5th Cir. 1990). <u>See</u> <u>Garrett v. Desa Industries, Inc.</u>, 705 F.2d 721, 724 (4th Cir. 1983)("The 'or' indicates that a witness may be qualified as an expert by any one of the five listed qualifications.").  Therefore, as long as Mr. True can demonstrate that Dr. Todd has either the "knowledge, skill, experience, training, or education" necessary to form an opinion, the testimony cannot be

---

[4]        Dr. Todd's cv indicates that he left the Federal Reserve Bank of Cleveland in 1994-just over 16 years ago.

excluded.

It is important when determining whether to exclude expert testimony to keep in mind the role of the judge and the jury.  "The evaluation of expert testimony is generally left to juries," the trial judge merely acts as a "gatekeeper" on scientific issues to ensure that the expert is qualified. Pride v. BIC Corp., 218 F.3d 566, 577 (6th Cir. 2000)(citing Daubert v. Merrell Dow Pharms., 509 U.S. 579, 597 (U.S. 1993)).  When acting in this role, an expert witness' qualifications are to be liberally judged under Rule 702.  Kopf v. Skyrm, 993 F.2d 374, 377 (4th Cir. 1993).  See also Pride v. BIC Corp., 218 F.3d 566, 577 (6th Cir. 2000)(explaining that Rule 702's qualification standard "has always been treated liberally"); Elcock v. Kmart Corp., 233 F.3d 734, 742 (3d Cir. 2000)("This court has had, for some time, a generally liberal standard of qualifying experts"); Weisgram v. Marley Co., 169 F.3d 514, 523 (8th Cir. 1999)("Rule 702 reflects an attempt to liberalize the rules governing the admission of expert testimony."); 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence*, § 702.02 (Joseph M. McLaughlin, ed., Matthew Bender 2d ed. 1997) ("Expert testimony is liberally admissible under the Federal Rules of Evidence. The general approach of the Rules is to relax traditional barriers to expert opinion testimony. The presumption under the Rules is that expert testimony is admissible.").  The judge need only find that the expert has the requisite "knowledge, skill, experience, training, or education," upon which to base his opinion; the jury is charged with determining what weight to give his testimony.

Dr. Todd spent twenty years working for the Federal Reserve Banks of Cleveland and New York, both as an attorney and a researcher.  During his tenure with the Federal Reserve Bank of Cleveland, Dr. Todd witnessed the rise of the modern fraudulent instruments like those at issue in this case and was involved in the processing of those instruments.  Dr. Todd worked in

the legal and research department at the Cleveland Federal Reserve from 1985 to 1994.  At this time, the modern version of financial instruments like those at issue here began to emerge.  After cycling through private banks, these instruments often came to rest at the Federal Reserve Banks. As explained in Mr. True's Notice, Dr. Todd "had responsibility to review novel and routine notes, bonds, bankers' acceptances, securities, and other financial instruments in connection with his work for the Reserve Banks' discount windows and parts of the open market trading desk function in New York."   In addition, while in the Federal Reserve Bank of Cleveland, Dr. Todd " became one of the Federal Reserve System's recognized experts on . . . the pledging of notes, bonds, and other financial instruments at the discount window . . ."  (Doc. #253, at 1.)

Bills of Exchange drawn on the Treasury started circulating in the early 1990s, and Dr. Todd was an expert witness in many of the resulting trials.  He was shown their financial instruments and asked to explain what happened to those instruments in the course of collection. More recently, Dr. Todd has appeared as an expert witness at criminal trials involving drafts or bills of exchange purportedly drawn on individuals' allegedly personal and private accounts at the Treasury, supposedly linked to individuals' Social Security accounts.

Even if the Government was correct that Dr. Todd's twenty years of employment with the Federal Reserve Banks were insufficient because his employment ended in 1994, Dr. Todd's subsequent experience qualifies him as an expert on these issues independent of his work at the Federal Reserve Bank.  In addition to the activities described above, as Dr. Todd's *curriculum vitae* demonstrates, he has been an economic consultant, instructor, research fellow, and author on both legal and economic issues.  These experiences have deepened his already extensive knowledge of the American banking and financial systems.  Dr. Todd is clearly qualified to testify as an expert by the liberal standards of Rule 702.

**B.**     **Reliability**

Rule 702 also requires that "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."  However, "[a]s a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination. Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded."  <u>Minn. Supply Co. v. Raymond Corp.</u>, 472 F.3d 524, 544 (8th Cir. 2006)(quoting <u>Children's Broad. Corp. v. Walt Disney Co.</u>, 357 F.3d 860, 864 (8th Cir. 2004).

The facts and principals underlying Dr. Todd's analysis are the same as those underlying Mr. Kerr's.  Dr. Todd, like Mr. Kerr, has a long history with the Federal Reserve where he became familiar with fictitious financial instruments.  As explained above, subsequent to Dr. Todd's employment with the Federal Reserve Banks, he has been employed as an economic consultant, instructor, research fellow, and author on economic issues.  Dr. Todd has also inspected many fictitious financial instruments through his involvement as an expert witness in many other cases.  His knowledge of the American banking system and intimate familiarity with financial instruments such as those involved in this case are the underlying facts and data upon which he relies.  This knowledge relates to both the processing of instruments by the United States as well as the prevalence of the instruments and people who personally adopt non-traditional views of the U.S. monetary and taxing systems.  Dr. Todd will visually examine the instruments placed into evidence by both prosecution and defense so that he is able to describe the characteristics and compare them to other instruments he has seen.  This method is reliable because of Dr. Todd's extensive background and experience with similar instruments.  It is also

the same method to be used by the Government's expert witness.

The Government also argues that Dr. Todd's testimony is inadmissible insofar as touches on Mr. True's mental state.  However, as the Government acknowledges, Mr. True did not "explicitly state that Mr. Todd will offer an opinion about whether the defendants acted willfully," but the Government then opined that his testimony nevertheless comes "dangerously close" to doing so.  The Government essentially argues that any evidence tending to show that Mr. True did not act willfully is inadmissible because it comes too close to being opinion evidence of Mr. True's state of mind.  Such an argument is obviously wrong, as it would exclude all evidence as to Mr. True's state of mind—an essential element of the case.  Because of this, and more importantly because Dr. Todd has not been offered, nor will he be offered, to testify as to his opinion of what Mr. True's state of mind is, the Government's argument must fail.

## IV.    TODD'S TESTIMONY IS NOT PREJUDICIAL, CONFUSING, OR WASTEFUL

The Government's final attempt to preclude the testimony of Dr. Todd is to argue that it is barred by Rule 403, which prohibits evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

Rule 403 "does not bar powerful, or even 'prejudicial' evidence. Instead, the Rule focuses on the 'danger of unfair prejudice,' and gives the court discretion to exclude evidence only if that danger 'substantially outweighs' the evidence's probative value." United States v. Gartmon, 146 F.3d 1015, 1021 (D.C. Cir. 1998).  The Government's argument falls far short of meeting this high standard.  As explained above, Mr. True does not intend to advocate the legal validity of the redemption theory or offer any "tax defier testimony" from Dr. Todd or anyone

else, and therefore does not create any unfair prejudice to the jury.[5]

Contrary to the Government's argument that Dr. Todd's testimony as to the history of the U.S. monetary system will confuse the jury, the fact is, such testimony is necessary for the jury to understand the nature of the instruments at issue.  Without an understanding of the history of the monetary system and the role of legitimate Bills of Exchange, the jury will not be able to properly evaluate the evidence presented by either side.  Dr. Todd's testimony will certainly not be as long as that of SA Michael Anderson.  Any confusion caused by his account of the history of the U.S. monetary system will be minimal compared to the help it provides the jury in understanding essential factual issues in the case, and will certainly fall far short of the requirement that the confusion substantially outweigh the probative value of the evidence.

Finally, the Government argues that Dr. Todd's testimony should be excluded because it will simply repeat the testimony of Mr. Kerr.  In the Government's Notice of Intention to Offer Expert Testimony (Doc. # 56), identifies four topics on which Mr. Kerr will testify: (1) that the BOEs and other instruments presented in this case are not genuine financial instruments; (2) that the defendants had no authority to issue any financial instruments on behalf of or through the United States Treasury; (3) as to the characteristics of genuine financial instruments; and (4) that the documents produced by the defendants have a similar appearance to genuine financial instruments.  Dr. Todd on the other hand, plans to testify on six related but different topics, discussed above; however, counsel is fairly confident he will not unduly repeat any testimony of Mr. Kerr.  The Government apparently bases this argument on Dr. Todd's testimony in some

---

[5]     Weinstein's Federal Evidences provides an illustrative list of evidence that has been found unfairly prejudicial, including evidence that: appeals to the jury's sympathies; arouses jurors' sense of horror; provokes a jury's instinct to punish; or triggers other intense human reactions.  4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence*, § 403.04 (Joseph M. McLaughlin, ed., Matthew Bender 2d ed. 1997).  The Government has not raised any concern that is remotely close any identified in Weinstein's illustrative list.

other unnamed case.  In light of the Notice filed by Mr. True specifically outlining what Dr.

Todd will testify about, *including his intention to rebut Mr. Kerr's testimony*, this is obviously

not a proper basis, nor is there any other proper basis, to conclude that Dr. Todd's testimony will

be the same as that offered by the Government.

　　　　WHEREFORE, Defendant Danny True respectfully requests that the Court deny the

Government's Motion and permit him to present the testimony of Dr. Walker Todd that is

essential to his case.

Dated:  April 30, 2010　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　HANNON LAW GROUP, LLP


　　　　　　　　　　　　　　　　　　　　___*/s/ J. Michael Hannon*___
　　　　　　　　　　　　　　　　　　　　J. Michael Hannon, #352526
　　　　　　　　　　　　　　　　　　　　1901 18th Street, N.W.
　　　　　　　　　　　　　　　　　　　　Washington, DC 20009
　　　　　　　　　　　　　　　　　　　　(202) 232-1907
　　　　　　　　　　　　　　　　　　　　(202) 232-3704 (facsimile)
　　　　　　　　　　　　　　　　　　　　jhannon@hannonlawgroup.com


　　　　　　　　　　　　　　　　　　　　___*/s/ Charles I. Cate*___
　　　　　　　　　　　　　　　　　　　　Charles I. Cate, #969360
　　　　　　　　　　　　　　　　　　　　2009 N. 14th Street, Suite 306
　　　　　　　　　　　　　　　　　　　　Arlington, Virginia 22201
　　　　　　　　　　　　　　　　　　　　(703) 522-2112
　　　　　　　　　　　　　　　　　　　　(703) 522-2114 (FAX)
　　　　　　　　　　　　　　　　　　　　chascate@catelawfirm.com