**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | |
| | : | |
| | : | **CRIMINAL NO. 08-271** |
| **DANNY TRUE,** | : | **HON. ROYCE C. LAMBERTH** |
| **a/k/a/ DARBY,** | : | |
| | : | |
| **Defendant.** | : | |
| _____ | : | |

**GOVERNMENT'S REPLY TO**
**DEFENDANT TRUE'S OPPOSITION TO GOVERNMENT'S MOTION**
**IN LIMINE TO PRECLUDE UNTIMELY NOTICED**
**TESTIMONY OF WALKER TODD**

The United States of America, by and through undersigned counsel, submits its reply to

defendant True's Opposition (Doc. #284) to the government's Motion in Limine to Preclude

Untimely Noticed Testimony of Walker Fowler Todd (Doc. # 256).  Nothing in defendant True's

Opposition excuses his profoundly belated Notice.  In any event, the Opposition further reveals

that defendant True's purpose is to expose the jury to inadmissible evidence through proposed

expert Walker Todd.   Accordingly, even if the Court were to excuse the untimely notice by

defendant True, it should preclude the testimony of Walker Todd as improper.

**Defendant True's Untimely and Unexcused Notice**

Defendant True boldly titles his papers with the claim that "TRUE'S NOTICE IS NOT

UNTIMELY." (Doc. # 284 at 2).  In fact, his expert witness notice is more than five months late

in violation of this Court's Pretrial Order of October 8, 2009 .  See Doc. #171 (requiring that

expert disclosure be made by October 23, 2009); see also Order of October 21, 2009, Doc. #176

(extending deadline to November 2, 2009.)

Nothing in defendant True's Opposition explains why he should be permitted to exceed the Court's deadline for expert witness notice by a period of more than five months.   Under Rule 16 (d)(1) a district court is entitled "for good cause, [to] deny, restrict, or defer discovery or inspection, or grant other appropriate relief."  In keeping with Rule 16, the Court's Pretrial Order in this case was issued for "good cause" to "administer the trial of this case most efficiently and in accordance with governing constitutional and statutory principles and the rules of this Court." (Doc. #171 at 1).  On this point, Rule 16(d)(2) gives the district court broad authority to enforce "this rule," by any order "that is just under the circumstances."   Therefore, in enforcing its own Pretrial Order, Rule 16(d)(2)(C) permits the Court to "prohibit" the offending party "from introducing the undisclosed evidence."[1]  See United States v. Wilson, 493 F. Supp. 2d 484, 488 (E.D.N.Y. 2006) (determining, under Rule 16 (d)(2)(C), that a violation of the district court's reciprocal expert witness disclosure deadline was a "separate and independent basis for precluding" defense expert testimony).

Defendant True had full notice of the government's proposed expert witness on fictitious financial instruments for eleven months prior to the Court's November 2, 2009 deadline for expert witness disclosure.  Defendant True provides no excuse for his untimeliness beyond the assertion that he "continued his efforts to gather evidence in his favor" after the initial trial date in this matter.  (Doc. #284 at 1).  By the same token, the government could have added additional exhibits to its case-in-chief in the months after the October 21, 2009 deadline imposed

---

[1]  Neither of the cases defendant True cites for his claim that "TRUE'S NOTICE IS NOT UNTIMELY" is to the contrary, because neither of those opinions addressed a situation where a party had violated the district court's discovery order at all, let alone by a period of months.  See United States v. White 582 F.3d 787 (7th Cir. 2009);  United States v. Mendoza-Paz, 286 F.3d 1104 (9th Cir. 2002).

by the Court, or could have identified additional witnesses after the Court's October 29, 2009 "Jencks" material deadline.  See Order of October 21, 2009.  (Doc. # 176).  The government has not taken advantage of the delay in the trial in such a manner because of the Court's order to the contrary.  As explained above, the Court is fully entitled to enforce its own pretrial order on this issue.  Accordingly, in fairness, defendant True should not be permitted to produce an expert five months later than this Court has required in its Pretrial Order.

### Mr. Todd Lacks a Basis Upon Which to Testify as an Expert on IRS Procedures

Defendant True's Opposition persists with his assertion that former Federal Reserve lawyer Walker Todd should be allowed to opine on "the process whereby the United States identifies fraudulent BOEs" and on how "the Treasury" could have "attempted to negotiate some of the BOEs" and "why it did not occur in the majority of circumstances."  (Doc. #284 at 7).  As the government explained in its Motion in Limine (Doc.# 256 at 9), Mr. Todd lacks the requisite specialized knowledge or experience under Federal Rule of Evidence 702 to qualify him to testify as an expert on the topic of how Internal Revenue Service Centers process tax payments.

The evidence at trial has shown that, starting in the Spring of 2003, defendant True and his co-defendants manufactured numerous fake checks styled as "Bills of Exchange" and caused them to be sent into IRS service centers in locations such as Ogden, Utah, and Cincinnati, Ohio, in purported payment of taxes.  Mr. Todd has never worked for the Internal Revenue Service, or any other part of the Treasury Department (See Doc. # 253, Ex. A.)  Nothing about being a lawyer for the Federal Reserve would qualify Mr. Todd as an expert on what happened to those fake checks once they were received at the Internal Revenue Service.

On April 28, 2010, Mr. Todd provided counsel for the government with an updated

"Biographical Summary" that states "Mr. Todd has eleven years as a seasonal associate (tax preparer) with the H&R Block office at Sears North Randall, North Randall, Ohio 44128.  His current title is Tax Specialist II.  His experience and course concentrations include retirement income and business income and expenses."  The government is at a loss to discern a connection between preparing income tax returns at H&R Block and knowing how an Internal Revenue Service Center processes tax payments.  Given his previous employment at the Federal Reserve, Mr. Todd may be familiar with the treatment of financial instruments at the "Discount Window" of the agency.   However, defendant True was not sending fake checks to the Federal Reserve, he was sending fake checks to the Internal Revenue Service.  Accordingly, Mr. Todd's proposed testimony on the inner workings of the Internal Revenue would lack an adequate basis.

**The Proposed Testimony of Mr. Todd Is Improper**

Defendant True proposes to expose the jury to expert testimony to the effect that defendant True's misconduct was merely the exercise of some right to disagree with the government, or that of free speech.   The Court should not permit such testimony because neither of these claims is a defense in this case.  Specifically, defendant True states that "Dr. Todd is expected to testify as to how Bills of Exchange and the Redemption Theory were utilized in the United States by *persons who disagreed with the Government's prevailing view* regarding the nature of money and the underpinnings of the federal tax system." (Doc. #284 at 6 (emphasis added)).

It is clear that defendant True disagrees with the government on just about everything. Disagreement, however, is no defense to the charges.  According to the Supreme Court, a defendant's views regarding the validity of the federal tax laws are not relevant to *mens rea*,

because "it makes no difference whether the claims of invalidity are frivolous or have

substance."   <u>Cheek v. United States</u>, 498 U.S. 192, 206 (1991).   Beliefs regarding the validity

of the tax laws are not relevant because mere disagreement with the tax laws is no defense to the

charged crime.  <u>Id.</u> at 202-03.  In this connection, the Supreme Court has declared that "a

defendant's views about the validity of the tax statutes are irrelevant to the issue of willfulness

and need not be heard by the jury, and, if they are, an instruction to disregard them would be

proper."  <u>Id.</u> at 206.

 Thus, under Supreme Court precedent, defendant True's personal disagreement with the

law is no defense and "need not be heard by the jury."  <u>Id.</u>   It follows, therefore, that the

proposed expert testimony to the jury about *other people* like defendant True who disagree with

the law is even more improper.  (<u>See</u> Govt's Proposed Final Jury Instr. #65 "[n]either a

defendant's disagreement with the law, nor his own belief that the law is unconstitutional -- no

matter how earnestly held -- constitutes a defense of good faith misunderstanding or mistake.   It

is the duty of all citizens to obey the law whether they agree with it or not.  2B Kevin F.

O'Malley et al., Federal Jury Practice and Instructions, § 67.25 (5th ed. 2000) (modified)).")

 Tellingly, Mr. Todd's proposed testimony is an attempt to excuse defendant True's

misconduct by situating him as a member of a protest movement of  people who "disagreed"

with the "government's prevailing view" about "the nature of money" and "underpinnings of the

federal tax system."  (Doc. # 284 at 6).  This attempt is in keeping with defendant True's

campaign to improperly urge the issue of First Amendment free speech protections on the jury.

So far, the Court has rightly refused to expose potential jurors to defendant True's invocations of

the First Amendment.[2]   In the same vein, Court should refuse to instruct the jury with defendant

True's proposed Special Jury Instruction No. 7 which reads in pertinent part, "Mr. True contends

that his actions were taken publicly, he did not hide his participation, and he presented his

arguments to government officials and the courts as part of his first amendment freedom of

expression." (Doc. # 215 at 20).   Instead, the Court should instruct the jury that the First

Amendment provides no defense to defendant True in this case.[3]   Given this challenge,

defendant True proposes an end run around the legal reality that the First Amendment is not a

defense in his case by inserting these issues into the trial via expert testimony.

Perhaps by way of indirect acknowledgment of the improper effect the proposed

testimony would have on the jury, defendant True reassures the Court that "Dr. Todd will not

testify that these theories are correct in their entirety; instead, he will explain what these theories

are so that the jury can better understand them and ultimately determine whether Mr. True

believed these theories in good faith, which is a complete defense to these charges." (Doc. #284

at 6.)  The proposed testimony is inadmissible because Walker Todd's proposed exposition of

---

[2]  See, defendant True's proposed voir dire questions not given to the jury "39. Do you believe that civil disobedience is a legitimate form of free speech? 40. Do you, any members of your family or close friend belong to any organization which promotes the principals of free speech? 41. Have you ever felt that your right of free speech has been unfairly challenged or restricted? 42. Have you ever felt annoyed or angered that another person or group may have abused its right to free speech?"  (Doc. # 215 at 5.)

[3]  See government's Proposed Final Jury Instruction no. 68, "The First Amendment's guarantee of free speech does not provide a defense to a criminal charge simply because the actor uses words to carry out his illegal purpose.  Speech that is an integral part of committing a crime is not protected by the First Amendment.  In other words, if a defendant is engaged in an illegal course of conduct, his activities are not protected by the First Amendment merely because the defendant used language in carrying out his illegal course of conduct.  Bradenburg v. Ohio, 395 U.S. 444 (1969); United States v. Kelly, 864 F.2d 569, 577 (7th Cir. 1989); United States v. Solomon, 825 F.2d 1292, 1297 (9th Cir. 1987)." (Doc. #214, App. B).

frivolous and discredited legal positions (e.g., the "Redemption Theory" claim that a 1933 "House Joint Resolution 192" established secret accounts at the Treasury for U.S. Citizens)  is irrelevant and would confuse the jury.

Of course, the Court instructs "the jury on the applicable law, and directs the jury to determine the facts from the evidence and to apply the law as given by the court to those facts." United States v. Garber, 589 F.2d 843, 849 (5th Cir. 1979).   As various pseudo-legal materials generated and used by the defendants have been introduced as exhibits in this trial, counsel for defendant True has frequently and correctly requested that the jury be instructed not to accept legal statements in those materials as representing the actual state of the law, but that the Court will instruct the jury on the law.   Given these requests, it is ironic that defendant True now seeks to regale the jury with bizarre legal theories by way of expert testimony from a lawyer, no less.

As the government explained at length in its Motion in Limine to Exclude Anticipated Tax Defier "Evidence" and Argument (Doc. # 62), the proper way for defendant True to get testimony before the jury about whatever anti-government legal theories he relied upon would be for him to tell the jury about them himself.  For example, counsel suggested in opening argument that defendant True wishes to assert that he had a good faith belief that the teachings contained in the book Vultures in Eagle's Clothing were a correct statement of the law of federal income taxation.  If that is his intention, defendant True could, by his testimony, lay the foundation for exposing the jury to the contents of that book.  Once that foundation is laid, the Court would determine whether the jury ought to be allowed to actually receive the book itself, or only passages from the book, or perhaps hear parts of it read.[4]

_____

[4]   As the government previously noted in its Motion in Limine, "Ultimately, it is for this Court to weigh the various competing interests and determine, in its discretion whether, to what

Of course, expert testimony by a lawyer like Mr. Todd about various legal theories would likely have an even more confusing effect on the jury than mere exposure to a book containing such theories, or excerpts thereof.   Moreover, there has been no proffer that defendant True relied upon Mr. Todd's exposition of the law.   Accordingly, the Court has no compelling reasons for exposing the jury to improper statements of the law through Mr. Todd.  Specifically, there is  no showing that defendant True ever relied upon Mr. Todd' s exposition of "Redemption Theory."   This renders Mr. Todd's exposition irrelevant, as well as confusing to the jury.

Indeed, Mr. Todd's resume reveals that he has published nothing on "Redemption Theory" that defendant True might have read.  Instead, Mr. Todd appears to have derived what he knows about the theory in the course of testifying for the defense in fake financial instrument cases. (See e.g.. Wahler Transcript, Ex. B to True's Opposition (declaring, with regard to "Redemption Theory" that "my usual story on that question is something like this. There's this theory that I first encountered in the western states"  (Doc.#284-2 at 19);  and stating, with regard to a Redemption claim, "I have seen that in other cases, yes." (Doc.#284-2 at 51.)   Under Supreme Court precedent, the Court should find Mr. Todd's "Redemption Theory" testimony unreliable because of his circular reasoning: he apparently claims to have developed expertise in

_____

extent, and in what form materials upon which a defendant claims to have relied should be admitted.  Among the factors which might be relevant to such a determination are the following: (1) the centrality of the materials to a defendant's claimed misunderstanding of the tax laws; (2) the materials' length and potential to confuse the jury; (3) the degree to which such materials are merely cumulative to a defendant's testimony or to other evidence; (4) the extent to which a defendant may be attempting to use them to instruct the jury on the law or to propagate tax defier beliefs; and (5) the potential utility of limiting instructions.  See United States v. Middleton, 246 F.3d 825, 838-40 (6th Cir. 2001); Nash, 175 F.3d at 434-35; Powell, 955 F.2d at 1214; Barnett, 945 F.2d at 1301 n.3." (Doc. # 63).

a subject area through rendering expert testimony on the subject. <u>See</u> <u>Daubert v. Merrell Dow</u> <u>Pharms., Inc.,</u> 43 F.3d 1311, 1317 (9th Cir. 1995) ("One very significant fact to be considered is whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying.")

In any event,  Mr. Todd's expert testimony for the defense at the 2007 criminal trial of Barton Buhtz suggests litigation is the actual source of his expertise two years later: "I didn't know much about redemption theory per se until I got involved in this case.  I was given a book to read 'Cracking the Code' that apparently is one of the texts that the promoters of redemption theory have relied upon extensively . . . and you add it all up and it creates this system of belief in the reader, or its calculated to try to induce a system of belief in the reader that may seem quite reasonable to the nonexpert reading the book."  (Buhtz Transcript, Ex. A at 7-8.)

In the absence of a showing that defendant True relied upon <u>Cracking the Code</u>, or any other source of Mr. Todd's exposition of "Redemption Theory," such testimony is irrelevant. Moreover, even if there was a showing that the defendant had relied upon <u>Cracking the Code</u>, Mr. Todd's opinion that "Redemption Theory" "may seem quite reasonable to the nonexpert reading the book" is highly improper.  In essence, Mr. Todd's testimony serves to bolster the credibility of a book that the jury has not seen, by an author it has never heard, and that the jury has no evidence the defendant relied upon. <u>See</u> <u>United States v. Bostian</u>, 59 F.3d 474, 480 (4th Cir. 1995).

As discussed above with respect to <u>Vultures in Eagle's Clothing</u>, even if defendant True testifies that he did rely upon <u>Cracking the Code</u> as the basis for a good faith belief that he could legally manufacture checks drawn on the U.S. Treasury, the Court should take  precautions to

9

prevent confusion of the jury.   See n.4 *supra* (citing Circuit Court authority on precautions district courts should take to reduce risk of invasion of the province of the Court and confusion by such material).  Given the risks of exposing the jury to such pseudo-legal material in the first instance, defendant True's proposal to have lawyer and Ph.D. Walker Todd superimpose on the material his expert opinion that it "may seem quite reasonable to the nonexpert" is especially problematic.

The Court should preclude Mr. Todd's expert testimony on how Mr. True's conduct is "typical of many of the persons who personally have adopted non-traditional views of the monetary and taxing systems" (Doc. # 253 at 3) because it is improper for third parties to testify regarding the subjective beliefs of others.  As explained in the government's Motion in Limine, the Fourth Circuit precluded testimony by third parties as to what they believed about a tax fraud scheme in United States v. Delfino, holding that "good faith reliance is a purely subjective defense." 510 F.3d 468, 470-71 (4th Cir. 2007).  The Third Circuit recently took a similar position in United States v. Street, No. 08-4091, 2010 WL 827789 (3rd Cir. March 11, 2010) (slip opinion).

The defendant in Street was convicted of three counts of willful failure to file tax returns. Id. at *1.  The defendant argued on appeal that the district court erred by not allowing him to subpoena government officials and question them about the alleged failure of the IRS to comply with the Paperwork Reduction Act. Id. at *3.  The Third Circuit disagreed, noting Street was allowed to present his theory about the Paperwork Reduction Act when he testified. Id.  Further, the Court of Appeals observed that the defendant failed to show how the testimony of witnesses that the defendant never met would impact his subjective belief.  Id.  In the same vein, defendant True fails to explain how the legal expositions of Mr. Todd, someone defendant True

presumably never met during the conspiracy period, are relevant to show his subjective good faith belief.

Instead, defendant True offers Mr. Todd for the purpose of testifying that defendant True's theories and actions are not unique.  In essence, defendant True would ask the jury, through Mr. Todd, to find him not guilty because many other people subscribe to his course of misconduct.  This is irrelevant and improper testimony for the jury to consider.

For the foregoing reasons, the Court should grant the government's Motion in Limine and preclude the expert testimony of Walker Todd.

<div style="margin-left:auto">

Respectfully submitted,

JOHN A. DICICCO
Acting Assistant Attorney General,
Tax Division

By:    /s/ Jeffrey A. McLellan
       Jeffrey A. McLellan
       Trial Attorney
       U.S. Department of Justice, Tax Division
       P.O. Box 972
       Washington, DC 20044
       Telephone: (202) 514-5150
       Fax: (202) 616-1786
       jeffrey.a.mclellan@usdoj.gov

</div>

Dated: May 2, 2010

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 2, 2010, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record in this case. I hereby further certify that on May 2, 2010, I submitted the foregoing to be served on:

Eddie Kahn
*Pro Se Defendant*

Alan Tanguay
*Pro Se Defendant*

Stephen C. Hunter
*Pro Se Defendant*

<div align="right">

By:   /s/ Jeffrey A. McLellan
Jeffrey A. McLellan
Trial Attorney

</div>